## In re WOOLLEY'S Estate.

Where the Common Pleas refused to appoint auditors on a petition by creditors against the representatives of a trustee of an insolvent, alleging the receipt of moneys, no appeal lies, the decree not being definitive.

The proceedings in such cases should be according to the directions of the act of Assembly by bill, a petition, answer, &c.

APPEAL from the Common Pleas of Allegheny county.

Sept. 7. The record returned showed that proceedings in the Common Pleas had been instituted, which resulted in a discharge of Woolley as an insolvent. That an account by his assignees had been filed and referred to auditors, whose report had been confirmed absolutely in 1836. The next thing was a rule taken in 1842, by Sewell, an attorney of the court, on the administrators and heirs of Fisk, trustee of Woolley, to show cause why an account should not be filed. This rule not having been complied with, a rule for an attachment was granted. Answers were then filed, (the paper book says in the Orphans' Court,) signed by the guardians of the minor children, and by the administrator and administratrix of Fisk, the trustee, denying knowledge of any further assets received by the trustee, than appeared in the above-mentioned report of the auditors.

To these an exception was filed, signed by counsel on behalf of the administrators of McLean and others, auditors of Woolley, that they had not charged themselves with the amount of a judgment recovered in an action in 1841, exhibiting the amount of the assets in their hands, as representatives of the said trustee. Another exception was subsequently filed, because there had been no charge for the proceeds of the sale of a farm. The petition of the attorney for the creditor above-mentioned, was then filed, setting forth the above account and decree, and a distribution thereon. That subsequently, large sums of money were received by the trustee, which

are unaccounted for. The rules, answers, and exceptions were then set forth, and the appointment of auditors " to investigate the allegation and answers, and all matters connected with the same," was prayed, which prayer was refused, and an appeal taken *by the attorney for the administrator of McLean.*

· *Williams,* for the appellee, moved to quash, because there had been no definitive decree; and cited Act 1836, §§ 31, 33, 36; Krider's Estate, 3 Rawle, 205; 3 Watts, 475.

*McCandless* and *Dunlop,* contrà, as to the jurisdiction of the court, cited Dyott's case, 2 Watts & Serg. 564; Act 1836, (Insolv.) § 29; Act 1836, (Assignees,) § 36; Dunlop's Dig. 706, n. 4.

*Sept.* 20. BELL, J.—The proceedings in this cause have been singularly irregular and disorderly, in spite of the statutes, which point out, with clearness and precision, the proper mode of procedure in such cases. Instead of initiating the proposed inquiry in the manner prescribed by the 57th section of the act of 29th March, 1832, adopted and extended to cases of trust by the 33d section of the act of 14th June, 1836, by bill or petition setting forth the facts necessary to give the court jurisdiction, the specific cause of complaint, and the relief desired; the complainants adopted, and the court sanctioned, the clumsy expedient of a rule to show cause, founded upon no distinct suggestion of fact, and grounded upon the mere motion of an attorney of the court, who, for aught that appears on the record, represented no one having an interest in the subject of controversy. It was not until after the personal representatives of the deceased trustee appeared, under the coercion of a rule to show cause why an attachment should not issue against them, and filed their answer, denying the receipt of assets by the trustee, other than those comprehended in, and settled by the account of 1836, that we learn who it is that asks for a further account, or on what ground their prayer proceeds. Even then, information is so sparingly accorded, that the defendants are apprized of nothing further than that objection to their answer is put in by "the administrators of John McLean, and other creditors of Abraham Woolley," because they have not charged themselves "with the amount of the judgment rendered in the district court of Allegheny county, No. 207, July Term, 1841." As if aware that this objection was insufficiently stated, an attempt is made to explain it by a supplemental exception taken by McLean's administrators, and James Parkes's administrators, who now appear for the first time, to the effect that the defendants "have

not charged themselves with the proceeds of farm No. 6, returned by said Woolley in his schedule, and afterwards sold by Alba Fisk, which are the same assets as alluded to, as embraced in said judgment." Here the matter is permitted to rest for nearly a year, when the plaintiff, seeming to realize that something further was necessary to inform the conscience of the court, presented a petition, with which they ought to have commenced, reciting the prior proceedings, averring, generally, the receipt of large sums of money by the assignee, subsequently to the settlement of his original account, and praying the court to appoint auditors to investigate the allegations and answers of the parties, and all matters connected with the same. The prayer of this petition was refused. This statement presents a synopsis of the whole record, as it is before us, and it will be perceived, it afforded little, if any, information of the precise character of the controversy, or of the facts on which it rests. If, instead of this confused and unsatisfactory jumble of the rule to show cause of the common law courts, with the petition, answer, and exceptions known in chancery; the mode of procedure pointed out by the acts of Assembly had been regularly pursued, we should have had an intelligent and intelligible statement of the ground of complaint and the defence thereto by bill, answer, and, if necessary, rejoinder, when the cause would have been ready for investigation, either directly by the court, in the first instance, or by reference to auditors, to ascertain and report the facts, together with an account if that should turn out to be proper: or the court might have ascertained the facts itself, and afterwards sent the case to an auditor to state an account between the parties. It is to be regretted that so much difficulty is experienced in inducing our courts to insist upon forms of procedure, sometimes absolutely necessary to a proper development of the subject of litigation, the orderly conduct of a cause, and the enlightened administration of its justice; and, at all times, eminently conducive to the convenient instruction of the tribunal, and of the parties. This regret is necessarily mingled with surprise, when, as here, we discover an absolute disregard of the injunctions of a statute which, while it confers on the common law courts some of the long withheld powers of a court of equity, in cases of trusts, seeks to introduce into practice the form and process used in equity, as the most convenient and comprehensive for enforcing the remedies and advancing the rights of the parties having an interest in the due execution of the trust.

In the present instance, an account having been settled by the

assignee in his lifetime, and definitively confirmed by the proper court, so long ago as the year 1836, professing upon its face, to be a final account of the execution of the trust; it was peculiarly proper the proceeding to enforce a supplemental account at the hands of administrators should have commenced by petition, verified by affidavit, stating the first settlement, and averring, as precisely as possible, the fund or estate subject to the trust, which had subsequently come into the hands or possession of the deceased assignee, and of which an account was demanded. To this the defendant would have been compelled to answer, either by an account stated, subject to exceptions on the part of the plaintiffs, or by a denial of the receipt of the assets, liable to be met by counter proofs to be furnished by the parties alleging such receipt. It may be said, the same results have been attained by the mode of proceeding actually pursued here. If so, it has been by the waiver of much that might have been insisted on by the defendants; and an extension of indulgence by the court, at the expense of profitable, and, if not dispensed with, necessary form. I have no hesitation in saying, that the court below ought to have refused to entertain the application of Woolley's creditors, in the shape in which it was presented, but having received and acted upon it, and the defendants having answered, without objection, it is now, perhaps, too late to take exception to its manifold irregularity as a means of defeating the proceeding altogether. But it is very clear the appeal taken to this court cannot be sustained, for it is altogether premature. The act of 1836 gives an appeal, only from the *definitive* judgment or decree of the court of Common Pleas; and in this particular it is but confirmatory of the pre-existing rule, which forbids an appeal from a mere interlocutory judgment or order of the inferior tribunal. But in the case in hand, not even an interlocutory decree has been pronounced; for the court below have done nothing further than to refuse the prayer of the plaintiff for the appointment of auditors. But this does not dispose of the whole, or, indeed, any part of the subject litigated. On the contrary, it is still competent for the Court of Common Pleas to investigate, primarily, the merits of the complaint, and the refusal to appoint auditors would seem to indicate an attempt so to do, rather than to make a final disposition of the cause in that court, which can only be done by overruling the plaintiff's exceptions, and discharging the rule to show cause, which has been substituted for the petition contemplated by the statute. The objection to the irregularity of the proceeding being out of the way; it is certainly the duty of the Common Pleas, in some

way, to inquire into the complaint preferred, and if it be thought inconvenient to employ the agency of an auditor for that purpose, it may be effected by means of depositions taken under a rule to be granted on the application of either party, or by examination of witnesses in open court. The parties are entitled to have the case spread on the record, so that an appellate court may judge of its merits, should either of them desire to prosecute an appeal from the final decree of the inferior court. In the present state of the record, we are, of course, unable to form any opinion of the value of the plaintiff's ground of complaint; but if, as suggested on the argument, this is an attempt to re-open, on the original grounds, the question settled in Fisk *v.* Sarber, 6 Watts & Serg. 18, we may be permitted to recommend to the plaintiffs to pause ere they involve themselves and their adversaries in what must prove, most certainly, to be a controversy fruitless of aught save trouble and expense. We are, however, called on to decide nothing at present, except that this appeal cannot be sustained, because, as yet, there is nothing to appeal from. As this cause effectually removes the case from this court upon the appeal, it is unnecessary to consider the other objections against its validity, urged on the argument.

Appeal quashed.